UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

NATALIE ROBY,

       Plaintiff,

v.

BLOOM ROOFING SYSTEMS,

       Defendant.

Case No.
Hon.

Nacht & Roumel, P.C.
Amanda M. Ghannam (P83065)
Nicholas Roumel (P37056)
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
734-663-7550
aghannam@nachtlaw.com
nroumel@nachtlaw.com
*Attorneys for Plaintiff*

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff, Natalie Roby, through her attorneys, Nacht & Roumel, P.C., brings her complaint against Defendant Bloom Roofing Systems, Inc. as follows:

## INTRODUCTION

This case arises out of Defendant Bloom Roofing Systems Inc.'s unlawful termination of Plaintiff Natalie Roby from her job as a Service Account Specialist because of her sex and pregnancy. Ms. Roby, an expert in the commercial roofing industry with over 15 years of experience, performed her job duties excellently

despite the additional challenges posed by her status as one of few women in a traditionally male industry. But immediately after she informed her supervisor, Matthew Shaw, that she was pregnant, he began to make negative, sarcastic, and condescending comments about her maternity leave, then wrote her up for an alleged lack of "grit" and failure to live up to the company's "core values." Ms. Roby exercised her rights under the Family Medical Leave Act beginning in June 2021 to take twelve weeks of maternity leave. After the birth of her daughter, Ms. Roby attempted to make arrangements to return to work in August 2021. But instead of welcoming her back, Bloom heartlessly tossed her aside, telling her only that they had "let her go" because they "decided to go in a different direction." Bloom left Ms. Roby and her three children without income or health insurance during a global pandemic, and she has suffered significant financial and emotional distress ever since. She now brings claims for retaliation in violation of the Family Medical Leave Act, sex discrimination in violation of the Elliott Larsen Civil Rights Act, and disability discrimination in violation of the Persons with Disabilities Civil Rights Act.

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff, Natalie Roby, is a woman, a mother of three, a resident of Livonia, Michigan, and a former employee of Defendant.

2. Defendant, Bloom Roofing Systems Inc., is a Michigan domestic profit corporation doing business in and with its resident agent located in Brighton, Michigan, within this judicial district.

3. This Court has federal question jurisdiction pursuant to the Family Medical Leave Act and 28 U.S.C. 1331.

4. Supplemental jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. 1367 as they arise from the same case and controversy.

5. Venue in this Court is proper pursuant to 28 U.S.C. 1391 as a substantial part of the events and omissions giving rise to this Complaint occurred in Brighton, Livingston County, Michigan, within this judicial district.

6. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission alleging sex and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964 and disability discrimination in violation of the Americans with Disabilities Act and will amend this Complaint accordingly upon receipt of her notice of right to sue.

## GENERAL ALLEGATIONS

7. Plaintiff, Natalie Roby, has a well-established and successful career in the commercial roofing industry with over 15 years of experience as a consultant.

8. Ms. Roby serves on the Board of Directors of the International Institute of Building Envelope Consultants.

9. Ms. Roby has always been one of relatively few female employees in a traditionally male-dominated industry.

10. Ms. Roby began her employment with Defendant, Bloom Roofing Systems Inc. ("Bloom" or "Bloom Roofing"), as a Service Account Specialist on February 3, 2020.

11. Defendant has approximately 150 employees in Southeast Michigan.

12. Ms. Roby was one of approximately 7 female employees at Bloom's Brighton office location, where she worked.

13. At all relevant times, Ms. Roby performed her job duties expertly.

14. Ms. Roby reported to Mr. Matthew Shaw.

15. Throughout her employment, Ms. Roby perceived that Mr. Shaw harbored animus towards women based on his behavior and comments.

16. For example, Ms. Roby had observed Mr. Shaw berate a female employee until she began to cry, then make condescending comments about the fact that she "cried too much."

17. Ms. Roby had also observed Mr. Shaw terminate the employment of a female employee (who was also a mother) and replace her with a male employee who was not a parent.

18. Mr. Shaw had also made comments about Ms. Roby's marriage that appeared to be based on her gender, such as telling her that she "better think twice"

before marrying her husband and commenting that her husband's job was "all she cared about."

19. In December 2020, Ms. Roby learned that she was pregnant with her third child.

20. Because Ms. Roby's pregnancy was considered high-risk, she did not disclose her pregnancy to anyone except her husband until approximately March 2021.

21. In or about March 2021, Ms. Roby informed her supervisor, Matthew Shaw, of her pregnancy.

22. After he learned of her pregnancy, Mr. Shaw's attitude towards Ms. Roby became increasingly contentious.

23. Mr. Shaw made frequent sarcastic and negative comments about Ms. Roby's pregnancy and the timing of her leave, such as: "We'll just have to have you do reports with a baby on your lap"; "You picked the best time to go on leave"; and "You'll just have to do inspections from home."

24. Mr. Shaw told Ms. Roby that her "most important job is being a mom," despite Ms. Roby stating her clear intent to return to full-time work after giving birth.

25. After learning of Ms. Roby's pregnancy, Mr. Shaw issued Ms. Roby her first and only disciplinary write-up, in which he stated that she lacked "grit" and was failing to live up the company's "core values."

26. The write-up was completely unfounded, as Ms. Roby had met all of her measurable goals for the relevant time period.

27. When Ms. Roby reminded Mr. Shaw that her work performance had never faltered, he attempted to backtrack, claiming that he "did not realize" that she had in fact met all of her goals.

28. Ms. Roby continued to work full-time up until the premature birth of her daughter on June 10, 2020.

29. Prior to giving birth, Ms. Roby had worked remotely in the mornings and in-person at Bloom's office in the afternoon.

30. After giving birth to her daughter, Ms. Roby then took four weeks of maternity leave and four weeks of short-term disability leave.

31. Ms. Roby also utilized her right to twelve weeks of leave under the Family Medical Leave Act, which ran concurrently with her maternity and short-term disability leaves.

32. After the birth of her daughter, Ms. Roby reached out to Mr. Shaw and Kristin Brown, Bloom's Human Resources Representative, to facilitate her return to work.

33. Ms. Roby was looking forward to her return and was proud to be able to continue working while taking care of her family.

34. Ms. Roby scheduled an initial meeting with Mr. Shaw and Ms. Brown on July 27, 2021, to discuss her return to work.

35. She brought her three children, all (except the newborn) wearing matching Bloom Roofing T-shirts, to meet the team, and was delighted to see her colleagues again.

36. At that meeting, Ms. Roby confirmed that she would return to work on September 3, 2021, at the conclusion of her twelve weeks of FMLA leave.

37. At that time, she also discussed with Ms. Brown that she had been suffering from post-partum depression.

38. In August 2021, Ms. Roby reached out to Mr. Shaw again to schedule a second meeting to finalize the details of her return to work.

39. Mr. Shaw ignored Ms. Roby for approximately two weeks.

40. Ms. Roby did not receive a response from Bloom until she copied Mr. Shaw's supervisor, Kris Orton, on a subsequent email.

41. Mr. Shaw then requested Ms. Roby's presence at a meeting with himself and Ms. Brown on August 25, 2021 at 8:00 A.M.

42. When Ms. Roby arrived on August 25, she anticipated only a discussion of her return to work.

43. Instead, she was completely blindsided by an immediate termination of her employment.

44. Mr. Shaw simply told Ms. Roby that she was being "let go" because Bloom "decided to go in a different direction."

45. Bloom offered no legitimate reason for terminating Ms. Roby's employment.

46. The meeting lasted under ten minutes, after which Mr. Shaw and Ms. Brown rushed Ms. Roby out of the building without an opportunity to gather her personal items from her work station.

47. Adding insult to injury, Bloom posted Ms. Roby's position on LinkedIn within 24 hours of her termination in a post stating that the company was "growing."

48. Bloom's conduct left Ms. Roby and her three children, including her newborn baby, without health insurance benefits in the midst of an ongoing global pandemic that has claimed the lives of over 900,000 Americans.

49. After her separation from employment, Ms. Roby has struggled with anxiety, stress, and exacerbated symptoms of post-partum depression.

50. Ms. Roby has had to seek counseling and therapy for the emotional distress caused by Bloom's conduct.

## COUNT I
### Retaliation in Violation of the Family Medical Leave Act
### 29 U.S.C. 2601 *et seq.*

51. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

52. At all relevant times, Defendant was an employee as defined by the Family Medical Leave Act, 29 U.S.C. 2611(4), and Plaintiff was an eligible employee as defined by 29 U.S.C. 2611(2).

53. Plaintiff engaged in activity protected by the Family Medical Leave Act by taking leave to which she was entitled under the FMLA for the birth of her daughter.

54. Defendant retaliated against Plaintiff by subjecting her to adverse employment actions including terminating her employment.

55. Defendant's actions in violation of the FMLA were willful.

56. Defendant's actions were motivated by Plaintiff's exercise of rights provided to her by the FMLA.

57. But for Plaintiff's exercise of her FMLA rights, Defendant would not have subjected Plaintiff to adverse employment actions.

## COUNT II
### Sex Discrimination in Violation of the Elliott-Larsen Civil Rights Act
### M.C.L. 37.2202 *et seq.*

58. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

59. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2201 *et seq.*

60. Plaintiff is a member of a protected class based on her sex (female).

61. MCL 37.2201(d) provides that "sex" includes, but is not limited to, pregnancy, childbirth, or a medical condition related to pregnancy or childbirth.

62. Defendant subjected Plaintiff to adverse employment actions, including terminating her employment.

63. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her sex, including her pregnancy.

## COUNT III
### Disability Discrimination in Violation of the
### Persons with Disabilities Civil Rights Act
### M.C.L. 37.1101 *et seq.*

64. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

65. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Persons with Disabilities Civil Rights Act.

66. Plaintiff had a disability within the meaning of MCL 37.1103(d) on account of pregnancy-related conditions including but not limited to post-partum depression, which substantially limited her major life activities including sleeping, thinking, concentrating, and interacting with others.

67. At all relevant times, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodation.

68. Defendant subjected Plaintiff to adverse employment actions, including terminating her employment.

69. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her disability.

70. But for Plaintiff's disability, Defendant would not have subjected her to such adverse actions.

71. Defendant's actions in violation of the PWDCRA were willful.

## DAMAGES

72. As a direct and proximate result of Defendant's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits and impairment of her earning capacity and ability to work, and will so suffer in the future.

73. As a direct and proximate result of Defendant's actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so suffer in the future.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## RELIEF REQUESTED

Wherefore, Plaintiff Natalie Roby prays that this Honorable Court grant the following relief:

a) Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the Family Medical Leave Act, Elliott Larsen Civil Rights Act, and Persons with Disabilities Civil Rights Act;

b) Award Plaintiff all lost wages, past and future, to which she is entitled;

c) Award Plaintiff compensatory damages;

d) Award Plaintiff punitive damages;

e) Award Plaintiff liquidated damages pursuant to the FMLA;

f) Award Plaintiff reasonable attorney's fees, costs, and interest; and

g) Award such other relief as this Court deems just and proper.

Wherefore, Plaintiff respectfully requests that this Court enter judgment against Defendant and all relief requested in this Complaint.

Respectfully submitted,

By: */s/ Amanda M. Ghannam*

Nicholas Roumel (P37056)
Amanda M. Ghannam (P83065)
Nacht & Roumel, P.C.
Attorneys for Plaintiff
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nroumel@nachtlaw.com
aghannam@nachtlaw.com

Dated: March 23, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2022, I electronically filed the foregoing instrument with the Clerk of the Court using the ECF system and that a copy was electronically served on all counsel or parties of record via the ECF system, and to any counsel or party not registered to receive electronic copies from the court, by enclosing same in a sealed envelope with first class postage fully prepaid, addressed to the above, and depositing said envelope and its contents in a receptacle for the U.S. mail.

/s/ Amanda M. Ghannam